IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| PLAINTIFF, | ) | |
| v. | ) | Case No.: 3:16-cv-00489-CWR-JCG |
| HINDS COUNTY, ET AL., | ) | |
| DEFENDANTS. | ) | |

**UNITED STATES' MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**

Plaintiff United States files this Motion for an Order to Show Cause Why Defendants Hinds County, Members of the Hinds County Board of Supervisors, and the Sheriff of Hinds County Should Not Be Held in Contempt of the Court's July 19, 2016 Order and Settlement Agreement. Order, July 19, 2016, Doc. No. 8 (hereinafter "Order, Doc. No. 8"); Settlement Agreement Between U.S. and Hinds County, Miss., Regarding the Hinds County Jail, July 19, 2016, Doc. No. 8-1 (hereinafter "Settlement").

The Settlement mandated improvements designed to remedy alleged systemic constitutional violations in the Hinds County Jail ("Jail"), which includes three facilities (the Raymond Detention Center ("Raymond"), the Jackson Detention Center, and the Work Center). These alleged violations include Defendants' failure to protect prisoners from harm, regulate use of force, and ensure safe conditions of confinement. The Settlement's Effective Date was July



PLAINTIFF'S EXHIBIT G

19, 2016.

Defendants should have implemented most Settlement provisions within one year of the Effective Date, or by July 19, 2017. Based on the Monitor's last written report, filed on March 5, 2019, and her May 9, 2019 oral report to the Court, Defendants have sustained substantial compliance with only one provision, the requirement for a full-time compliance coordinator, and achieved substantial compliance with only one additional provision, which required separate youth housing from adults. Court-Appointed Monitor's Seventh Monitoring Report at 9-10, 73, 102, Doc. No. 27 (hereinafter "Monitor's Seventh Report"). Defendants have missed every major Settlement deadline. As a result of Defendants' ongoing noncompliance and failure to make adequate progress in implementing critical Settlement provisions, Jail conditions remain violent and dangerous.

In support of this Motion, the United States contemporaneously files a Memorandum of Law in Support, and the following documents:

Attachment 1 Enforcement Letter (1/10/19)

Attachment 2 Supplemental Enforcement Letter (1/24/19)

Attachment 3 May 2019 Transcript (5/9/19 pp 15-20)

Attachment 4 Incident Information (12/6/18)

Attachment 5 October 2017 Transcript (10/25/17 pp 55-56)

Attachment 6 Sheriff's Letter 3/4/19

Attachment 7 Board Letter 3/4/19

Attachment 8 Priority Recommendations June 2018

The United States further states the following:

1. The parties entered into the Settlement after the United States issued a May 21, 2015 notice pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, describing numerous violent incidents, excessive use of force, and even riots.

2. Prisoner-on-prisoner assaults, escapes, staff uses of force, and mass disturbances continue to beleaguer the Jail. In response, Defendants have allowed increased amounts and types of use of force, without adequate policies, training, safeguards, and supervisory oversight, to prevent misconduct. Monitor's Seventh Report at 3-4, 35-48.

3. In her last written report, the Monitor warned that Defendants risk a major riot if they do not implement Settlement requirements. Monitor's Seventh Report at 34. At the May 9, 2019 status conference, the Monitor informed the Court that another riot had indeed occurred.

4. Pursuant to Settlement Paragraph 163, the United States formally notified Defendants that they had violated key Settlement provisions, and that their violations exposed prisoners to dangerous, unconstitutional conditions. The United States supplemented the Enforcement Letter after the Monitor completed a January 14-18, 2019 compliance inspection.

5. On March 4, 2019, Defendants responded. Generally, Defendants acknowledged some areas of non-compliance, reported recent, unconfirmed improvements, promised additional improvements, and offered explanations for non-compliance. Notably, the Sheriff's Letter does not claim compliance with the Settlement and actually acknowledges some of the United States' concerns about dire conditions in the Jail. The Board's Letter also generally does not claim that Defendants have complied with the Settlement. Instead, the Board: a) asserts that responsibility for responding to the United States' concerns lies primarily with the Sheriff; b) claims that the

County complied with the Settlement's youth provisions by moving youth from the Jail to the Henley-Young facility; and c) repeats arguments previously made to the Court at a January 15, 2019 status conference. As further discussed in this Motion and accompanying Memorandum of Law, neither response obviates the need for contempt.

6. Because the parties have not been able to resolve their differences, the United States now moves for contempt as permitted by the Settlement. While Defendants are in breach of the Settlement generally, the United States asks the Court for relief only in regards to certain key provisions that are the foundation for further reforms and that were identified in the United States' Enforcement Letters.

**Defendants Have Unreasonably Delayed the Development of Policies and Procedures Needed to Ensure a Safer Facility.**

7. Defendants have not drafted or implemented adequate policies and procedures that comport with Settlement requirements. The Settlement requires Defendants to review and develop appropriate policies and procedures "within 6 months of the Effective Date." Defendants missed this deadline and have failed to take the steps required to come into compliance.

**Defendants Allow Security Staff to Use Force Without Adequate Supervisory Oversight, Training and Controls.**

8. Defendants have not remedied longstanding problems with use of force in the Jail. The Settlement requires that use of force policies include minimum training requirements, inventory controls, supervisory oversight, medical checks, documentation, and use of force investigations. Defendants have not completed use of force policies that fit the needs of a corrections facility. Monitor's Seventh Report at 35-45.

9. Without adequate policies, training, and oversight, staff continue to use hazardous techniques - including hard physical strikes, tasers, and recently, "less lethal" shotguns - without adequate safeguards. Monitor's Seventh Report at 35-45. Jail staff, including supervisors, have misused force, and failed to provide accurate reports about such use. *Id.* at 3-4, 35, 41.

**Defendants Have Taken No Action to Develop and Implement Staffing and Supervision Requirements.**

10. Defendants have not implemented an adequate Jail staffing and supervision plan. The Settlement requires Defendants to hire sufficient staff "to adequately supervise prisoners, fulfill the terms of this Agreement, and allow for the safe operation of the Jail." It also requires implementation of a staffing study. The study adopted in this case recommends approximately 433 Jail positions. Court Appointed Monitor's Third Monitoring Report at 14-17, Doc. No. 19 (hereinafter "Monitor's Third Report"). Defendants have not even begun to budget or plan for a staffing increase intended to satisfy the staffing study. According to the Monitor's last written report, only 238 budgeted positions were filled. Monitor's Seventh Report at 2, 13-16. During the May 9, 2019 status conference, the Monitor reported that the most recent staffing data showed that the current staffing level was even lower than last reported.

11. Defendants' failure to plan, authorize, or budget for adequate numbers of security staff is longstanding. Inadequate recruitment, pay, and retention programs have led to constant staffing problems, and the most recently assessed staffing level of 238 Jail positions is comparable to staffing levels over past years. *See* Monitor's Seventh Report at 13-16; Monitor's Sixth Report at 17; Monitor's Third Report at 16; Court Appointed Monitor's First Monitoring Report at 12, Doc. No. 12-1 (hereinafter "Monitor's First Report").

12. Without adequate staffing, Defendants cannot implement critical prisoner supervision and security policies, including objective classification, welfare checks, safety inspection rounds, and direct supervision of prisoners. Monitor's Seventh Report at 10-18.

13. Grossly inadequate staffing means that there are no officers assigned to critical posts, conducting welfare checks, or responding to serious incidents. Monitor's Seventh Report at 2-4, 15-16, 26-28; Monitor's Sixth Report at 17 ("The current staffing is inadequate to safely operate the Jail."). For instance, there are no officers assigned to general population units in order to conduct "direct supervision" of these units.[1] Monitor's Seventh Report at 15-16. Defendants also recently ceased 24-hour staffing of the critical suicide and special management units. Monitor's Seventh Report at 15; Monitor's Sixth Report at 17.

**Defendants Have Failed to Follow the Settlement Requirements when Making Supervisor and Training Staff Hiring Decisions.**

14. Defendants have not hired and retained qualified trainers and supervisors. Instead, Defendants have promoted or hired trainers and supervisors without adequate credentials, including individuals with significant disciplinary histories and little or no jail background. *See* Monitor's Seventh Report at 12-13; Monitor's Sixth Report at 13-15.

**Defendants Have Failed to Correct Serious Physical Plant and Safety Equipment Deficiencies.**

15. The Jail's physical plant remains unreasonably dangerous. Defendants have not developed basic inspection and maintenance procedures needed to improve physical plant and fire safety. Broken locks, inadequate video camera coverage, inoperative doors, inoperative fire safety equipment, and unsecured critical posts are particularly serious problems in the Raymond facility. The physical security of that facility is so poor that staff have grown accustomed to

[1] The Settlement defines "direct supervision" more completely at Paragraph 9. It is a term of art that involves placing officers in housing units so they have continuous interaction with prisoners.

ignoring gaping security gaps. Monitor's Seventh Report at 3, 32-34; Monitor's Sixth Report at 2, 4, 32-34. Developing a maintenance program, better supervision, and improved safety inspection processes could mitigate some of the pre-existing physical plant problems and prevent prisoner vandalism, but Defendants have failed to adopt such required reforms. Monitor's Seventh Report at 3, 32-34; Monitor's Sixth Report at 2, 4, 32-34.

**Defendants Have Not Completed the Transition of Youth Prisoners from the Jail to a Facility with the Required Age-Appropriate Programs.**

16. Defendants continue housing youth in facilities that do not provide required programs. The Settlement gave Defendants the option to decide where to house youth as long as any facility met minimum supervision, education, housing, and programming standards. Defendants should have made that decision within six months of the Effective Date and implemented that decision 12 months later. As specifically permitted by the Settlement, Defendants decided to transition all youth to the Henley-Young Juvenile Detention Center. However, until recently, Defendants continued to house youth at the Jail's adult Raymond facility. After the United States issued its Enforcement Letters, Defendants finally moved the last youth from Raymond to Henley-Young in February 2019. However, Defendants do not have any policy prohibiting the return of youth to Raymond. Moreover, their responses to the Enforcement Letters do not provide a clear commitment to keeping the youth out of the Jail. Monitor's Seventh Report at 5, 64-68.

17. More importantly, Defendants have not completed policy changes, program improvements, and facility modifications in order to house youth at Henley-Young in a manner consistent with Settlement requirements. Monitor's Seventh Report at 5-6, 64-80. Defendants have no clear plan to complete implementation of the relevant Settlement provisions. Behavior management, mental health, and education programs are still rudimentary. While improving these programs is a longer-term, complex project, Defendants have failed to make even relatively

limited improvements, such as converting a part-time psychologist position to full-time or devising a plan to add programming (classroom) space. Monitor's Seventh Report at 5-6, 67-69.

**Defendants' Non-Compliance Is Longstanding, Current, and Ongoing.**

18. The Settlement has a court-ordered "Effective Date" of July 19, 2016. Defendants have repeatedly missed deadlines for implementing Settlement provisions addressed by this Motion. *See generally* Court-Appointed Monitor's First, Second, Third, Fourth, Fifth, Sixth, and Seventh Monitoring Reports, Doc. Nos. 12-1, 16, 19, 22, 23, 24, 27.

19. The Court ordered Defendants to begin implementing the Settlement provisions "immediately upon the Effective Date." Unless otherwise specified, all Settlement requirements "must be implemented within one year of the Effective Date," or July 19, 2017. *Id.*

20. More than a year after full compliance with the Settlement was due, Defendants are only in substantial compliance with two provisions. Monitor's Seventh Report at 9-10.[2] Throughout this time, prisoners confined in the Jail continue to suffer serious harm and ongoing risk of serious harm. This Motion targets the Settlement provisions that are foundational to Defendants' ability to expedite progress and address the ongoing harm.

WHEREFORE the United States respectfully requests that the Court Order Defendants to Show Cause Why They Should Not Be Held in Contempt of Settlement Agreement Paragraphs 9, 22, 37-39, 41-42, 44-46, 50-62, 68, 78-84, 130-31, and for any additional relief that the Court deems necessary.

Respectfully submitted,

---

[2] Defendants are in partial compliance with 44 provisions and non-compliant with 46 provisions.

**FOR THE UNITED STATES:**

D. MICHAEL HURST, JR.
United States Attorney
Southern District of Mississippi

/s/ Candace G. Mayberry
CANDACE G. MAYBERRY (MS #104014)
MITZI DEASE PAIGE (MS #6014)
Assistant U.S. Attorneys
U.S. Attorney's Office
Southern District of Mississippi
501 E. Court Street – Ste. 4.430
Jackson, MS 39201
candace.mayberry@usdoj.gov
(601) 973-2838
(601) 965-4409 (fax)

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

STEVEN ROSENBAUM
Chief
Civil Rights Division
Special Litigation Section

/s/ Laura L. Cowall
LAURA L. COWALL (DC # 481379)
Special Counsel
laura.cowall@usdoj.gov
(202) 514-1089
(202) 514-0212 (fax)

/s/ Christopher N. Cheng
CHRISTOPHER N. CHENG (PA #69066)
Trial Attorney
christopher.cheng@usdoj.gov
(202) 514-8892
(202) 514-4883 (fax)

AARON FLEISHER
Trial Attorney
aaron.fleisher@usdoj.gov

United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record:

/s/ Candace G. Mayberry
CANDACE G. MAYBERRY (MS #104014)
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of Mississippi
501 E. Court Street – Ste. 4.430
Jackson, MS 39201
candace.mayberry@usdoj.gov
(601) 973-2838
(601) 965-4409 (fax)